UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:20-CR-62 |
| v. ) | |
| ) | JUDGE GREER |
| CASEY BROOKE GREENE ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Casey Brooke Greene, and the defendant's attorney, Douglas L. Payne, have agreed upon the following:

1. The defendant will plead guilty to count one of the indictment. This count charges the defendant with the offense of conspiracy to commit bank fraud, money laundering, and aggravated identity theft in violation of 18 U.S.C. § 371. The punishment for this offense is as follows: a term of imprisonment of not more than five years, a fine of not more than $250,000, supervised release of not more than three years, and a mandatory assessment of $100.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this indictment. The United States also agrees not to further prosecute the defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by the defendant that are related to the charges contained in the indictment in this case and that are known to the United States Attorney's Office for the Eastern District of Tennessee at the time this plea agreement is signed by both parties.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant conspired with other individuals named in the indictment and not named in the indictment to commit bank fraud, money laundering, and aggravated identity theft. The conspiracy took place through the use of fraudulently created business banking accounts, fraudulently created payment processing accounts, fraudulently created personal banking and credit card accounts, and the use of a network of runners (like defendant) who would obtain cash proceeds generated from the conspiracy through automated teller machines (ATMs) or other point of sale terminals that constituted the criminal proceeds of bank fraud.

Typically, one or more members of the conspiracy (usually one or more persons situated in the Atlanta, Georgia area) would obtain fraudulent business bank accounts with financial institutions. These accounts often were in the names of actual businesses that had no knowledge that their business identity had been used to open a new account. One or more conspirators would then enter into agreements with one or more "payment processors," which are companies appointed by a business or merchant to process financial transactions, including debit card and credit card transactions, from various channels for banks and financial institutions.

Payment processors assign a unique "merchant identification number" to a business or merchant before the business or merchant begins processing payments by debit and credit card. After that, when a business or merchant uses a payment processor to process transactions, the business or merchant receives an electronic credit from the payment processor for processed credit

2

card or debit card sales. The electronic credit is made to a checking account at a financial institution that the business or merchant provides to the payment processor when applying to do business with the payment processor. The electronic credit normally takes place within a day of any particular transaction.

As part of the conspiracy, one or more conspirators would unlawfully obtain the personal identifying information of actual individuals and use that information to open fraudulent bank accounts and fraudulent credit card information at various financial institutions, including Fifth Third National Bank ("Fifth Third") and Branch Banking and Trust Co. ("BB&T"). Both of these financial institutions carry federal deposit insurance.

As part of the conspiracy, one or more conspirators would then cause the fraudulent business accounts to accept electronic payments from the fraudulently opened bank or credit card accounts, thereby generating proceeds. Also, as part of the conspiracy, one or more coconspirators (usually in the Atlanta, Georgia area) would cause access devices (usually in the form of debit cards) to be mailed to locations throughout the Eastern District of Tennessee and elsewhere. The access devices permitted a conspirator to withdraw the proceeds from the unlawful conspiracy proceeds. At that point, one or more runners (like defendant) would obtain the fraudulent access devices and use them to engage in ATM or point of sale withdrawals.

Once a runner (like defendant) obtained cash with the fraudulent access devices, the runner would receive payment that typically was ten percent (10%) of the cash obtained. The runner would then either transport the remaining proceeds (or assist others in transporting those proceeds) to one or more conspirators in the Atlanta, Georgia area.

In furtherance of the conspiracy, defendant committed several overt acts. For example, on March 18, 2019, defendant entered the Walmart located at 21531 Market Center, Bristol, VA 24202

3

and used a Fifth Third Bank card ending in 6787 (issued to a real person with the initials S.Q.) to make a $3.13 purchase and receive $100.00 in cash back. Walmart surveillance captured the transaction, and in an image from that surveillance the card is visible and still has a new credit card sticker on top:



Similarly, on July 5, 2019, defendant used a BB&T ATM located at 203 Broyles Dr., Johnson City, TN 37601 and used BB&T card number ending in 5286 (issued to a real person with the initials J.K.) to obtain $500.00 in cash. The ATM surveillance camera captured defendant engaging in the transaction from her vehicle:



4

Defendant has maintained a relationship with codefendant Chimezie Uchenna, who recruited her to participated during the transactions noted above. During the course of the conspiracy, defendant obtained proceeds in furtherance of the conspiracy or was involved in assisting others in obtaining proceeds that she knew or reasonably should have known would result in pecuniary harm to one or more victims in an amount that was less than $6,500.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

   a) the right to plead not guilty;

   b) the right to a speedy and public trial by jury;

   c) the right to assistance of counsel at trial;

   d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

   e) the right to confront and cross-examine witnesses against the defendant;

   f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

   g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following:

   a) The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum;

   b) The Court will impose special assessment fees as required by law; and

   c) The Court may order forfeiture as applicable and restitution as appropriate.

5

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

        d) Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, and in consideration of the terms of this plea agreement and the policy statement set forth in U.S.S.G. § 6B1.2(b) and related commentary, the United States and the defendant agree and stipulate, and agree to recommend at the time of sentencing: (i) the applicable base offense level should be six in accordance with U.S.S.G. § 2B1.1(a)(2); (ii) the reasonably foreseeable pecuniary harm to the defendant from the offense is less than $6,500 for no increase under U.S.S.G. § 2B1.1(b)(1)(A); and (iii) the defendant relocated or participated in relocating the fraudulent scheme to another jurisdiction to avoid law enforcement and that the defendant engaged in sophisticated means for an increase of two levels under U.S.S.G. § 2B1.1(b)(10). The defendant understands and agrees that the recommendations set forth in this paragraph are made pursuant to Rule 11(c)(1)(B) and, as such, are not binding on the Court. The defendant further understands and agrees that if the recommendations set forth in this paragraph are rejected by the Court, that rejection may not be used by the defendant as a basis to rescind this plea agreement or withdraw the defendant's guilty plea.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offenses, including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that constitute or are derived from proceeds traceable to a violation or a conspiracy to commit such offense, in violation of 18 U.S.C. § 371.

The defendant agrees to forfeit the defendant's interest in the following properties:

1. **U.S. Currency**

    Approximately $342,502.64 U.S. currency seized from the defendant, CASEY BROOKE GREENE, and others on or about March 18, 2020; and

2. **Money Judgment**

7

> A personal money judgment against the defendant, CASEY BROOKE GREENE, in favor of the United States in an amount to be determined which represents proceeds the defendant personally obtained as a result of the violation of 18 U.S.C. § 371.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the defendant agrees to send all money judgment payments to the United States Department of Treasury. Defendant also agrees that the full money judgment amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

8

10. The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victim(s) of any offense charged in this case (including dismissed counts); and (2) the victim(s) of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offense(s).

11. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.

9

The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

  b)   The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

  c)   If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

  12.   The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

  a)   The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

  b)   The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two

10

exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though

11

there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
ACTING UNITED STATES ATTORNEY

11/22/2021
Date

By: /s/
Mac D. Heavener, III
Assistant United States Attorney

11/08/2021
Date

Casey Brooke Greene
Defendant

11/12/2021
Date

Douglas L. Payne
Attorney for the Defendant

12